IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATIVE FISH SOCIETY,<br>MCKENZIE FLYFISHERS,<br><br>                Plaintiffs,<br><br>v.<br><br>NATIONAL MARINE FISHERIES<br>SERVICE; PENNY PRITZKER,<br>Secretary of Commerce; WILLIAM STELLE,<br>Regional Administrator, NMFS; OREGON<br>DEPARTMENT OF FISH & WILDLIFE;<br>ROY ELICKER, Director, ODFW;<br>BRUCE McINTOSH, Acting Fish<br>Division Administrator, ODFW; CHRIS<br>WHEATON, Northwest Region Manager,<br>ODFW,<br><br>                Defendants. | Case No.: 3:12-cv-00431-HA<br><br><br>OPINION AND ORDER |

Pursuant to Fed. R. Civ. P 54(d), LR 54-3, the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(4), and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 *et seq.*, Native Fish Society and McKenzie Flyfishers respectfully move the court for an award of attorney fees, costs, and other expenses in the amount of $813,965.07 against the federal defendants ("NMFS").

Page 1 - OPINION AND ORDER

## STANDARDS

In this matter, plaintiffs request a fee award pursuant to both the ESA's citizen suit provision, 16 U.S.C. § 1540(g), and the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). Pursuant to the ESA, the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such an award is appropriate." 16 U.S.C. § 1540(g)(4). Pursuant to EAJA:

> Unless expressly prohibited by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any [costs], incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Because the ESA's citizen suit provision provides an express authorization for attorney fees in ESA cases, the court looks first to the ESA and then to EAJA in evaluating plaintiffs' fee request. *Oregon Natural Desert Ass'n v. Vilsack*, Nos. 2:07-cv-01871-HA, 2:08-cv-00151-HA, 3:03-cv-00381-HA, 2013 WL 334828, at *2 (D.Or. July 2, 2013) (citing Payment of Attny's Fees in Litigation Involving Successful Challenges to Fed. Agency Action Arising Under the Admin. Procedure Act and the Citizen-Suit Provisions of the [ESA], 2000 WL 34474453 (2000)). As such, EAJA's fee provisions are subordinated to those of the ESA and only if a fee is not authorized under the ESA does the court determine whether the fee would be authorized pursuant to EAJA. Because the fee shifting provisions of the ESA and EAJA constitute partial waivers of sovereign immunity, the waivers must be construed in favor of federal defendants and against an award of fees when such an award is not clearly authorized by the statutes. *Ardestani v. I.N.S.*,

Page 2 - OPINION AND ORDER

502 U.S. 129, 137 (1991).

A district court should calculate awards of attorney fees using the "lodestar" method. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). The "lodestar" is calculated by multiplying the number of hours an attorney reasonably expended by a reasonable hourly rate. *Id.* The party requesting fees has the "burden to submit detailed records justifying the hours expended. *Winniger v. SI Mgmt. LP*, 301 F.3d 1115, 1126 (9th Cir. 2002). However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry" and "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of 'results obtained.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The "results obtained" factor is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* Where a plaintiff succeeds on only some of his claims, the Supreme Court has adopted a two-part test to determine whether a requested fee should be reduced. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

Under *Hensley*'s two-part test, if the unsuccessful and successful claims are unrelated, the fee award may not include fees for time spent litigating the unsuccessful claims. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). Related claims "involve a common core of facts or [are] based on related legal theories." *Id.* (quotation and citations omitted). Unrelated claims are "distinctly different" and are based on disparate facts and legal theories. *Id.* Factors that may be relevant in determining relatedness include whether the different claims were

Page 3 - OPINION AND ORDER

designed to seek relief for the same course of conduct, whether the claims were presented separately, whether testimony on claims overlapped, and whether evidence concerning one claim was material and relevant to another. *Id.*

If the unsuccessful and successful claims are found to be related, the court must apply the second part of the *Hensley* test and gauge the overall success of the plaintiff in relation to the hours expended. *Id.* "If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive." *Id.* (quoting *Hensley*, 461 U.S. at 435-37).

## DISCUSSION

In this case, federal defendants contend that the fees requested are excessive for a number of reasons, including the difference between the relief sought and that ultimately achieved, the fact that plaintiffs did not prevail on their claims, the hourly rates sought, and duplicative billing.

First, defendants argue that plaintiffs should not be compensated for time spent on claims on which they did not prevail. Under the first factor in *Hensley's* two-part test, this court concludes that plaintiffs' APA claims and ESA claims were related. While the claims may require different scopes of review, they involved the same set of facts, similar legal theories, and sought relief for the same course of conduct. Each of plaintiff's claims sought to correct a decade-long pattern of noncompliance with the ESA, and overall, they were successful in achieving compliance.

Under *Hensley's* second factor, the court finds that plaintiffs succeeded in bringing the agencies into compliance with ESA and NEPA and dramatically reduced that pressure of hatchery operations on wild fish. This success constitutes "excellent results." Because the court

Page 4 - OPINION AND ORDER

concludes that the successful and unsuccessful claims were related, and because plaintiffs achieved excellent results, the court declines to make any reductions to plaintiffs' requested fees due to plaintiffs' alleged failures.

Defendants even concede that plaintiffs are entitled fees until the 2012 Hatchery Genetic Management Plan (HGMP) was approved, but they argue that fees are inappropriate after that point because it was the Oregon Department of Fish and Wildlife's independent decision to submit new HGMP proposals in 2013. Accordingly, defendants argue that NMFS was required by its own regulations to reinitiate consultation and withhold Mitchell Act funding. This court disagrees. On December 31, 2012, federal defendants possessed data demonstrating stray rates of 25-30% for spring Chinook, but they waited until September 2013, in the midst of responding to plaintiffs' Motion for Partial Summary Judgment, to reinitiate consultation. In light of this chronology, the court finds that this lawsuit prompted federal defendants to alter their course even after September 2012. Therefore, plaintiffs are entitled to an award under the ESA.

Defendants also argue that, under EAJA, their position was "substantially justified"; therefore plaintiffs are not entitled to EAJA fees. This court disagrees. Defendants failed to impose limits and conditions on the Sandy Hatchery for years prior to this litigation. Additionally, defendant's litigation position was not substantially justified, as the court concluded that it erred in its evaluations of the hatchery program and imposed arbitrary limitations.

Defendants do set forth several line item complaints to which the court agrees. First, plaintiffs acknowledge that they did not prevail against the state. However, plaintiffs have settled their claim for fees with the state. The court does not believe that plaintiffs should recover an amount from the federal defendants for the prosecution of the state claim. Any such time and

Page 5 - OPINION AND ORDER

costs should be deducted from this court's award. Federal defendants propose a reduction of $62,262.02 and the court agrees. Defs.' Response [322] at 11.

Second, federal defendants object to the time billed by Ms. Lovell asserting that she was not acting as co-counsel but as a consulting attorney. Defs.' Response [322] at 13. To the contrary, plaintiffs assert that she was acting as co-counsel. Becker Third Decl. [329] at 1. However, the policy of this court is to reduce the hours where more than one lawyer performed the same task. *See Taylor v. Albina County Bank*, N80o. CV-00-1089-ST, 2002 WL 31973738, at *4 (D.Or. Oct. 2, 2002). The federal defendants point out that Ms. Lovell and Mr. Mellgren spent 50 % and 40% of their recorded time in conferences among counsel. Joint Decl. of Markowitz and Fite [324] at 7. Federal defendants argue that the fee request should be reduced by $80,000.00 for the excessive conference time. Joint Decl. of Markowitz and Fite [324] at 8. This court agrees and notes that plaintiffs sometimes had three attorneys bill for court appearances.

Third, federal defendants object to time spent by counsel Becker doing and billing for nonprofessional tasks. Plaintiffs concede that a reduction of $5,348.00 is warranted for purely clerical tasks. Plaintiffs also concede that a reduction of $2,756.00 is warranted to reduce certain paralegal tasks to a law clerk rate. The court adopts these reductions.

The second part of the lodestar calculation requires the court to determine a reasonable hourly rate for the attorneys involved in the litigation. In the Ninth Circuit, the key factor that a court must rely upon in determining a "reasonable rate" is the "prevailing market rate." *Maldonado v. Lehman*, 811 F.2d 1341, 1343 (9th Cir.), *cert. denied*, 484 U.S. 990 (1987).

Plaintiffs' requested hourly rates and costs are set out in Exhibit F to David Becker's

Page 6 - OPINION AND ORDER

Third Declaration. Federal defendants assert that plaintiffs' request is both unreasonable and excessive. Defs.' Response [322] at 1. However, in the joint declaration of David B. Markowitz and Lawson E. Fite, filed in support of federal defendant's opposition, they conclude "that the rates requested likely are reasonable, provided that the billing records of these attorneys reflect efficiencies that should be gained when a case is handled by an attorney claiming specialized skill or expertise." [324] at 7. Therefore, the court will not reduce plaintiffs' requested hourly rate.

## CONCLUSION

Based on this analysis and the reductions identified above, plaintiff is awarded attorney fees and costs in the amount of $684,851.55.

IT IS SO ORDERED.

DATED this 19 day of December, 2014.

Ancer L. Haggerty
United States District Judge